**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | |
|---|---|
| LAKISHA MONIQUE JOSEPH, individually and on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>MAC PIZZA MANAGEMENT, INC.,<br><br>Defendant. | Case No. ________________<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

## CLASS ACTION COMPLAINT

Plaintiff Lakisha Monique Joseph ("**Plaintiff**"), by the undersigned attorneys, on her own behalf and behalf of all others similarly situated, upon personal knowledge with respect to herself, and upon information and belief as to all other matters, brings this class action against Defendant MAC Pizza Management ("**Defendant**"), pursuant to the Fair Credit Reporting Act ("**FCRA**"), 15 U.S.C. § 1681 *et seq*., and alleges as follows:

## NATURE OF THE ACTION

1. Over 50 years ago, in enacting the FCRA, Congress recognized that with the "establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal 'blips' and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable[.]" 116 Cong. Rec. 36570 (1970).

2. Congress was particularly concerned with the expanding practice[1] of "credit

[1] Today, approximately three billion consumer credit reports are issued annually in the United States. Moreover, every month, credit reporting agencies receive roughly 1.3 billion updates regarding 200+ million consumer files—an average of fifteen changes per file. National Consumer

reporting," noting in a Senate Report accompanying the landmark legislation that a consumer's future employment could be jeopardized by an incomplete (or otherwise erroneous) credit or consumer report. S. Report 91-517 at 4 (1970).

3. Notably, Congress amended the FCRA in 1996, upon recognizing "the significant amount of inaccurate information that was being reported by consumer reporting agencies and the difficulties that consumers faced getting such errors corrected." S. Rep. No. 108-166 at 5-6 (2003). Specifically, prospective employers were, *inter alia*, obtaining and using consumer reports in a manner that violated the privacy rights of job applicants. S. Rep. No. 104-185 at 35 (1995).

4. Consequently, when relying on consumer reports to make hiring and subsequent employment-related decisions, the FCRA now requires employers to: (i) disclose to consumers, in writing, that their consumer reports may be obtained for employment purposes; (ii) obtain authorization from consumers prior to procuring their reports; (iii) give notice to consumers before and upon taking adverse actions related to their reports; and (iv) provide consumers with copies of their reports and a reasonable time to address the information contained therein. *See* 15 U.S.C. § 1681b(b)(1)-(3).

5. Despite these and other prohibitions, Defendant violated the FCRA by, *inter alia*, failing to: (i) comply with the FCRA's authorization requirements in obtaining the permission of Plaintiff and other consumers to procure their consumer reports for employment purposes; (ii) provide copies of consumer reports to Plaintiff and other consumers prior to taking adverse employment action against them based on such reports; and (iii) certify that Defendant complied with the FCRA's mandates prior to obtaining copies of consumer reports referencing Plaintiff and

Law Center, *Fair Credit Reporting* § 1.2.2 (10th ed. 2022), *updated at* www.nclc.org/library.

other consumers.

6. Upon information and belief, Defendant's actions in violation of the FCRA are part of a pattern of practice undertaken with numerous other individuals. As such, Plaintiff, on her own behalf and behalf of all others similarly situated, files this Class Action Complaint seeking statutory damages, punitive damages, costs and attorneys' fees, and all other relief available pursuant to the FCRA.

## PARTIES

7. Plaintiff Lakisha Monique Joseph is, and was at all relevant times, a resident of Beaumont, Texas. Plaintiff was the subject of a consumer report[2] procured by Defendant.

8. Defendant MAC Pizza Management is engaged in the business of operating restaurants specializing in the retail sale of prepared pizzas and related food items in central and southeast Texas and can be served through its registered agent, Registered Agents Inc., at 5900 Balconies Drive Suite 100, Austin, TX 78701. Upon information and belief, Defendant employs over 1000 individuals.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States.

10. This Court has personal jurisdiction over Defendant because Defendant operates in this District. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

---

[2] The FCRA defines "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for …(B) employment purposes[.]" 15 U.S.C. § 1681(d)(1)(B).

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this District, and Defendant is subject to personal jurisdiction here.

## LEGAL AUTHORITY

12. The FCRA is "undeniably a remedial statute that must be read in a liberal manner in order to effectuate the congressional intent underlying it." *Cortez v. TransUnion*, 617 F.3d 688, 722 (3d Cir. 2010).

13. Section 1681b(b)(1) of the FCRA dictates when a consumer reporting agency[3] may provide a consumer report to an employer for employment purposes as follows:

> (A) the person who obtains such report from the agency *certifies* to the agency that—
>
> > (i) the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable; and
> >
> > (ii) information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation; and
>
> (B) the consumer reporting agency provides with the report, or has previously provided, a summary of the consumer's rights under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) [1] of this title.

15 U.S.C. § 1681b(b)(1) (emphasis added).

14. Absent said certification from an employer, the consumer reporting agency must

[3] The FCRA defines "consumer reporting agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681(a)(f).

deny access to a consumer's personal information. *See id.* It is the "false certification of compliance" which creates liability under the FCRA. *See U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996).

15. Section 1681b(b)(2)(A) of the FCRA regulates the conduct of persons who procure a consumer report about employees or prospective employees as follows:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
>
> > (i) a clear and conspicuous *disclosure* has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
> >
> > (ii) the consumer has *authorized* in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C § 1681b(b)(2)(A) (emphasis added).

16. The FCRA's disclosure requirement places consumers on notice that a consumer report may be obtained as part of the employment application process. In turn, the FCRA's authorization requirement provides consumers with an opportunity to consent to the lawful use of their personal information for limited purposes. *See id.*

17. Section 1681b(b)(3) regulates the conduct of persons intending to take an adverse employment action against any employee or prospective employee based on a consumer report as follows:

> Except as provided in subparagraph (B), in using a consumer report for employment purposes, *before* taking any adverse action[4] based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—

---

[4] 15 U.S.C. § 1681b(k)(1)(B)(ii) defines adverse action, in pertinent part, as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee."

> (i) a copy of the report; and
>
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) 1 of this title.

15 U.S.C. § 1681b(b)(3) (emphasis added).

18. As a practical matter, Section 1681b(b)(3) provides consumers with a reasonable amount of time to review their consumer reports and address any incomplete, inaccurate, or misleading information therein, as well as to discuss any alleged errors with prospective employers before any adverse employment action is taken. *See id*.

## FACTUAL ALLEGATIONS

19. In August 2024, Plaintiff applied online for an assistant manager/shift manager position at one of Defendant's Domino's Pizza franchise locations in Beaumont, Texas.

20. Defendant subsequently interviewed Plaintiff in person.

21. On August 20, 2024, Defendant sent Plaintiff an email containing a pre-screen questionnaire, including a background check authorization form. The email indicated a District Manager would contact Plaintiff to discuss her application if she was qualified.

22. On November 5, 2024, Plaintiff filled out the pre-screen questionnaire and emailed it to Defendant's Human Resources Department.

23. On November 10, 2024, Defendant emailed Plaintiff a conditional job offer for a Customer Service Representative position.

24. Defendant's November 10 email also outlined the next steps in Plaintiff's onboarding process.

25. That same day, Plaintiff accepted the position and completed Defendant's direct deposit enrollment process.

26. Also on November 10, 2024, following its receipt of her background check authorization form, Defendant requested a consumer report relating to Plaintiff ("Consumer Report") from Checkr, a consumer reporting agency.

27. On November 15, 2024, Plaintiff attended Defendant's virtual new hire orientation class and completed her remaining onboarding documents.

28. On information and belief, Plaintiff was not compensated by Defendant for the hours she spent attending orientation and filling out onboarding paperwork.

29. Under the Fair Labor Standards Act ("FLSA"), an employer is required to pay employees for all hours worked, including time spent in mandatory training and onboarding activities. *See* 29 U.S.C §§ 206-207 and 29 C.F.R. § 785. 27 *et seq*.

30. Plaintiff's attendance at Defendant's orientation and completion of onboarding paperwork were a condition of her employment and primarily benefited Defendant.

31. Accordingly, Plaintiff's orientation attendance and completion of onboarding documents constitutes compensable work under 29 U.S.C. § 785.27.

32. Defendant failed to compensate Plaintiff for her time in violation of the FLSA.

33. On November 18, 2024, Plaintiff's Consumer Report was completed by Checkr.

34. That same day, Defendant emailed Plaintiff her work schedule for November 18-24, 2024.

35. Later that day, Defendant emailed Plaintiff a pre-adverse action notice, which she did not view or open at the time.

36. The pre-adverse action notice provided Plaintiff with two options to challenge Defendant's adverse action: (i) contact Checkr to dispute the accuracy of the Consumer Report or (ii) contact Defendant directly to provide additional information that could influence Defendant's

decision.

37. Defendant's pre adverse action notice further provided, "If we do not hear from you within 7 days from the receipt of this notice, we will make our engagement or hiring determination based on the information currently available to us."

38. On the morning of November 20, 2024, Defendant's assistant manager texted Plaintiff to inform her that she was no longer eligible for employment due to the results of her Consumer Report.

39. Shortly thereafter, Plaintiff called Defendant's assistant manager to request additional information on how to challenge the adverse employment action.

40. At the direction of the assistant manager, Plaintiff subsequently sent an email to Defendant's Human Resource Department indicating that she wished to discuss the contents of her Consumer Report.

41. Later on November 20, 2024, Plaintiff received an email from Todd Brautigam ("Brautigam"), an HR Assistant employed by Defendant, stating that: (i) Plaintiff had been conditionally hired pending the results of her background check; (ii) the background report did not meet Defendant's hiring standards; and (iii) her offer of employment had been rescinded.

42. Defendant's actions, taken before the expiration of the seven days provided in its pre-adverse action notice of November 18, 2024, denied Plaintiff the opportunity to provide additional information that would have helped Defendant better evaluate Plaintiff for the position.

43. Defendant's actions, taken before the expiration of the seven days provided in the pre-adverse action notice of November 18, 2024, caused Plaintiff to lose wages and benefits that would have been earned by Plaintiff.

44. Plaintiff lost the opportunity to provide additional information that would have

helped Defendant better evaluate her fitness for the Customer Service Representative position as was promised in Defendant's pre-adverse action notice.

45. Brautigam's email on November 20, 2024, sent two days after Defendant's pre-adverse action notice, confirms Plaintiff was denied employment and that Defendant's adverse employment action was final.

46. On November 25, 2024, Defendant sent Plaintiff a post-adverse action notice.

47. Defendant's post-adverse action notice was a sham because, Defendant had already confirmed its adverse employment action five days earlier, via Brautigam's email.

48. Despite Plaintiff's efforts to exercise her rights under the FCRA by contacting Defendant's Human Resources Department to discuss and/or dispute the Consumer Report, Defendant summarily rejected her inquiry.

49. Defendant refused to engage with Plaintiff as to provide her with any meaningful opportunity to contest, correct, or explain the information contained in the Consumer Report before taking an adverse employment action.

50. Defendant paid Checkr a fee for the Consumer Report.

51. Denying Plaintiff employment, in whole or in part, based on information in the Consumer Report is an adverse action which creates an injury in law.

52. As a direct result of Defendant's failure to abide by the FCRA adverse action process, Plaintiff was left confused and unaware regarding: (i) the basis for the denial of employment; (ii) how to challenge the action; and (iii) whether she could challenge the action.

53. Plaintiff's lack of knowledge regarding her rights created significant emotional distress and anxiety.

54. Defendant's actions fundamentally undermined the fairness and transparency the

FCRA was designed to protect and caused Plaintiff to suffer both tangible losses (including the loss of a good salary and benefits) and intangible injuries (such as loss of dignity, uncertainty about the future, and frustration over being denied a fair process).

55. Upon information and belief, before obtaining the Consumer Report, Checkr required Defendant to certify pursuant to 15 U.S.C. § 1681b(b)(1) that: (i) the FCRA protections provided by 15 U.S.C. § 1681b(b)(2) and § 1681b(b)(3) would be followed by Defendant; and (ii) Plaintiff's Consumer Report would not be used in violation of any applicable federal or state equal employment law or regulation.

56. Plaintiff would not have authorized Defendant to access Plaintiff's personal information to procure the Consumer Report if Plaintiff had known that Defendant would not honor the legal protections Plaintiff received in exchange for said access.

57. Defendant exceeded any authorization provided by Plaintiff. Moreover, Defendant exceeded Plaintiff's limited consent when the personal information contained in the Consumer Report was used in a manner that violated the FCRA.

58. The illegal use of Plaintiff's personal information is akin to a breach of trust.

59. Defendant breached its obligations and Plaintiff's trust by violating the law and the terms of the authorization which establish Defendant's expected standards of conduct.

60. Defendant would not have had access to Plaintiff's personal information without obtaining a copy of the Consumer Report.

61. The illegal use of Plaintiff's personal information is an injury in fact.

62. Upon information and belief, Defendant certified to Checkr that it would not use Plaintiff's Consumer Report in violation of any applicable federal or state equal employment law or regulation.

63. Upon information and belief, Defendant certified to Checkr that it would abide by 15 U.S.C. § 1681b(b)(3), if that section of the FCRA became applicable.

64. Upon information and belief, Defendant also contractually agreed to abide by 15 U.S.C. § 1681b(b)(3) (*i.e.*, to provide a copy of the consumer report to the applicant prior to taking adverse action) and other notice provisions if allowed access to Plaintiff's personal information.

65. Defendant's certification was false because Defendant did not abide by the FCRA adverse action requirements.

66. Upon information and belief, Checkr would not have provided Defendant access to Plaintiff's Consumer Report if Defendant had failed to certify that Defendant would abide by the FCRA's adverse action procedures.

67. Defendant's actions deprived Plaintiff of a meaningful opportunity to invoke the discretion of the decision maker before termination.

68. Defendant violated its statutory and contractual obligations by systematically violating the provisions of the FCRA, despite having received the benefits of obtaining regulated personal information concerning Plaintiff.

69. Plaintiff's authorization was a contractual agreement by which Defendant agreed to provide the protections ensured by the FCRA in exchange for access to Plaintiff's personal information.

70. Defendant's use of Plaintiff's Consumer Report in violation of the FCRA's adverse action requirements breached the implied covenant of good faith and fair dealing.

71. Defendant breached the parties' covenant of good faith and fair dealing when it used Plaintiff's limited authorization to procure the Consumer Report and subsequently denied Plaintiff an opportunity to dispute, explain, and/or otherwise address the personal information

contained therein.

72. Plaintiff did not receive the protections to which Plaintiff was entitled, by law and contract, because of Defendant's actions.

73. Defendant is aware of its need to comply with the FCRA laws because, on information and belief, Defendant executed a certification with Checkr that requires Defendant to abide by the requirements of the FCRA.

74. Defendant's violations of the FCRA, combined with its knowledge of the requirements of the FCRA, are evidence that Defendant's violations were reckless.

75. Upon information and belief, the manner in which Defendant took adverse action against Plaintiff is consistent with Defendant's policies and procedures.

## CLASS ACTION ALLEGATIONS

76. **Class Definitions**: Pursuant to Federal Rule of Civil Procedure 23, Plaintiff proposes the following class definitions:

> **ADVERSE ACTION CLASS:** All individuals against whom Defendant took an adverse action based on information in their consumer report and did not receive a copy of the consumer report prior to the adverse action, for the period of the previous two years prior to the date of filing through the conclusion of this matter.
>
> **AUTHORIZATION CLASS:** All individuals who were the subject of one or more consumer reports in which Defendant exceeded the authorization obtained from consumers for the period of the previous two years prior to the date of filing through the conclusion of this matter.
>
> **CERTIFICATION CLASS:** All individuals who were the subject of one or more consumer reports in which Defendant falsely represented that Defendant would comply with 15 U.S.C. § 1681b(b)(3) for the period of the previous two years prior to the date of filing through the conclusion of this matter.

77. As used herein, the term "Proposed Classes" shall refer to the aforementioned putative classes.

78. Plaintiff reserves the right to amend the class definitions before the Court determines whether certification is appropriate, if discovery or further investigation reveals that the Proposed Classes should be expanded or otherwise modified.

79. Excluded from the Proposed Classes are: (i) Defendant, its parents, subsidiaries, affiliates, officers, and directors; (ii) those who make a timely election to be excluded from the Proposed Classes, and (iii) any member of the judiciary presiding over this action.

80. **Numerosity**: The Proposed Classes are so numerous that joinder of all members of each class is impracticable. Defendant, which employs approximately 3,000 individuals, regularly obtains and uses personal information in consumer reports to conduct background checks on prospective and current employees. Defendant also regularly obtains consumer reports via false certifications and relies on the personal information therein, in whole or in part, as a basis for adverse employment action. Given the broad scope and nature of Defendant's business, Plaintiff believes that at least 100 individuals would fall within the definitions of the Proposed Classes during the relevant time period. Members of the Proposed Classes can be identified through Defendant's records.

81. **Common Questions of Law and Fact**: Virtually all issues of law and fact in this class action predominate over any questions affecting individual members of the Proposed Classes. The questions of law and fact common to the Proposed Classes include:

a. Whether Defendant takes adverse employment actions based on information in consumer reports;

b. Whether Defendant violated the FCRA by taking adverse actions against Plaintiff and other individual members of the Proposed Classes based on information in a consumer report without providing them an opportunity to dispute, explain and/or otherwise address the information in the report;

c. Whether Defendant obtained consumer reports via a false 15 U.S.C.

§ 1681b(b)(1) certification;

d. Whether Defendant's actions exceeded the limited scope of the authorization for procuring the consumer reports;

e. Whether Defendant's actions were reckless; and

f. The proper measure of damages.

82. **Typicality**: Plaintiff's claims are typical of the members of the Proposed Classes in that Plaintiff is entitled to relief under the same causes of action and upon the same facts. For example, the FCRA violations suffered by Plaintiff are typical of those suffered by other members of the Proposed Classes. Defendant typically fails to provide consumers with an opportunity to dispute, explain, and/or otherwise address the information in their consumer reports prior to taking adverse action against them based on information in the reports. Additionally, before obtaining the consumer reports, Defendant typically certified that the reports would be used for employment purposes and that Defendant would abide by 15 U.S.C. § 1681b(b)(2) and (3). Finally, Defendant treated Plaintiff consistent with other members of the Proposed Classes in accordance with Defendant's standard policies and practices.

83. **Adequacy of Representation**: Plaintiff is an adequate representative of the Proposed Classes because Plaintiff's interests coincide with, and are not antagonistic to, the interests of the members of the Proposed Classes. Plaintiff has retained attorneys competent and experienced in FCRA class action litigation. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of all members of the Proposed Classes.

84. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Moreover, questions of law and fact common to the members of the Proposed Classes overwhelmingly predominate over individual questions that may arise. Specifically, Defendant's

conduct as described herein stems from common and uniform policies and practices which resulted in common violations of the FCRA.

85. Even if members of the Proposed Classes were able or willing to pursue individual cases, a class action would still be preferable given that a multiplicity of individual actions would likely increase the expense and time of litigation in light of the complex legal and factual controversies presented. Conversely, a class action provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision before a single trier of fact, and would result in reduced time, effort, and expense for all parties and the Court, and ultimately, the uniformity of decisions.

86. Plaintiff seeks statutory damages, punitive damages, costs and attorneys' fees, and all other relief available pursuant to the FCRA on behalf of all members of the Proposed Classes.

87. Plaintiff intends to send notice to all members of the Proposed Classes to the extent required by Fed. R. Civ. P. 23. The names and addresses of the members can be identified through Defendant's records.

**<u>Count I</u>**
**ADVERSE ACTION**
**(On Behalf of Plaintiff and the Adverse Action Class)**

88. Plaintiff incorporates the foregoing paragraphs 1- 89 of this Class Action Complaint as if fully set forth herein.

89. Defendant obtained consumer reports concerning Plaintiff and the Adverse Action Class.

90. Defendant used the consumer reports to take adverse action against Plaintiff and the Adverse Action Class.

91. Defendant violated the FCRA by failing to provide Plaintiff and the Adverse Action

Class with an opportunity to dispute, explain, and/or otherwise address the information in their consumer reports.

92. Defendant violated the FCRA by failing to provide Plaintiff and the Adverse Action Class with reasonable time to review and address the information in their consumer reports.

93. Defendant violated the FCRA by failing to provide Plaintiff and the Adverse Action Class with reasonable time to dispute their consumer reports.

94. Had Defendant complied with the FCRA, Plaintiff and the Adverse Action Class would have been given time to review, explain, dispute and/or otherwise address the information contained in their consumer reports.

95. Plaintiff and the Adverse Action Class would have never permitted Defendant to obtain copies of their consumer reports had they known that Defendant's policy was to take adverse employment actions in violation of the FCRA.

96. Defendant's failure to comply with the mandates of the FCRA injured Plaintiff and the Adverse Action Class.

97. Defendant acted in deliberate or reckless disregard of Defendant's obligations under the law and the rights of Plaintiff and the Adverse Action Class.

98. Defendant's deliberate or reckless conduct is reflected by, among other things, the following facts:

a. Defendant has access to legal advice;

b. Defendant has ignored regulatory guidance from FTC Informal Staff Opinions and the unambiguous language of the FCRA;

c. 15 U.S.C. § 1681b(b)(1) required Defendant to certify that the protections of 15 U.S.C. § 1681b(b)(3) would be followed; and

d. Defendant entered a contract by which Defendant agreed to abide by the FCRA's adverse action requirements.

99. Plaintiff and the Adverse Action Class are entitled to statutory damages of not less than $100 and not more than $1000 for each of Defendant's violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

100. Plaintiff and the Adverse Action Class are also entitled to punitive damages for Defendant's violations pursuant to 15 U.S.C. § 1681n(a)(2).

101. Plaintiff and the Adverse Action Class are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

## Count II
## AUTHORIZATION VIOLATIONS
## (On Behalf of Plaintiff and the Authorization Class)

102. Plaintiff incorporates the foregoing paragraphs 1-89 as if fully set forth herein.

103. Defendant procured consumer reports concerning Plaintiff and the Authorization Class under false pretenses.

104. Plaintiff and the Authorization Class would never have permitted Defendant to obtain copies of their consumer reports had they known that Defendant exceeded their authorization in violation of the FCRA.

105. Plaintiff and the Authorization Class would never have permitted Defendant to obtain copies of their consumer reports had they known that Defendant would not honor the FCRA's authorization requirements and protections.

106. Plaintiff and the Authorization Class would never have authorized Defendant to obtain copies of their consumer reports if they had known that Defendant: (i) would violate the provisions of the FCRA; (ii) was obtaining their consumer reports in violation of the law; and (iii) had a policy, pattern, and practice of taking adverse actions in violation of the FCRA.

107. Defendant's actions exceeded the scope of the limited consent granted by Plaintiff

and the Authorization Class.

108. Defendant acted in deliberate or reckless disregard of Defendant's obligations and the rights of Plaintiff and the Authorization Class under the provisions of the FCRA. Defendant's deliberate or reckless conduct is reflected by, among other things, the following facts:

a. Defendant has access to legal advice;

b. Defendant has ignored regulatory guidance from FTC Informal Staff Opinions and the unambiguous language of the FCRA; and

c. 15 U.S.C. § 1681b certification addresses the requirement of obtaining and using a consumer report.

109. Plaintiff and the Authorization Class are entitled to statutory damages of not less than $100 and not more than $1000 for each of Defendant's violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

110. Plaintiff and the Authorization Class are also entitled to punitive damages for Defendant's violations pursuant to 15 U.S.C. § 1681n(a)(2).

111. Plaintiff and the Authorization Class are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

## Count III
## CERTIFICATION VIOLATIONS
## (On Behalf of Plaintiff and the Certification Class)

112. Plaintiff incorporates the foregoing paragraphs 1-89 of this Class Action Complaint as if fully set forth herein.

113. Consumer reporting agencies are legally prohibited from providing employment-related consumer reports without first obtaining the certifications required by 15 U.S.C. § 1681b(b)(1).

114. Prior to obtaining an applicant's consumer report for employment purposes, per 15

U.S.C. § 1681b(b)(1), Defendant was required to provide to the consumer reporting agency certification: (i) of the purpose for obtaining the report; and (ii) that Defendant would abide by FCRA protections.

115. According to the provisions of 15 U.S.C. § 1681b(b)(1), Defendant cannot obtain an applicant's consumer report until Defendant has certified that Defendant complied with the mandates of 15 U.S.C. § 1681b(b)(2).

116. According to the provisions of 15 U.S.C. § 1681b(b)(1), Defendant cannot obtain an applicant's consumer report until Defendant has certified Defendant will comply with the mandates of 15 U.S.C. § 1681b(b)(3), if that section becomes applicable.

117. According to the provisions of 15 U.S.C. § 1681b(b)(1), Defendant cannot obtain an applicant's consumer report until Defendant has certified that information from the consumer report will not be used in violation of any applicable federal or state equal employment opportunity law or regulation.

118. On information and belief, prior to obtaining consumer reports concerning Plaintiff and the Certification Class, Defendant certified that Defendant had complied with 15 U.S.C. § 1681b(b)(2) and would comply with 15 U.S.C § 1681b(b)(3), if that section became applicable.

119. On information and belief, prior to obtaining consumer reports concerning Plaintiff and the Certification Class, Defendant also certified that personal information regarding Plaintiff and the Certification Class would not be used in violation of any applicable federal or state equal opportunity employment law or regulation.

120. Defendant knew that it would not comply with the mandates of 15 U.S.C. § 1681b(b)(1) prior to obtaining copies of consumer reports concerning Plaintiff and the Certification Class.

121. Defendant, therefore, made false certifications to obtain and use consumer reports concerning Plaintiff and the Certification Class for employment purposes.

122. The provisions of 15 U.S.C. § 1681b(b)(1) are intended to protect the privacy rights of Plaintiff and the Certification Class.

123. The provisions of 15 U.S.C. § 1681b(b)(1) are intended to protect the statutory right of Plaintiff and the Certification Class to review protected information.

124. Plaintiff and the Certification Class were injured by Defendant's practice of obtaining consumer reports via false certifications.

125. Absent Defendant's false certifications, Defendant would not have gained access to consumer reports concerning Plaintiff and the Certification Class, and Plaintiff and the Certification Class would not have suffered an adverse employment action.

126. Plaintiff and the Certification Class would have never permitted Defendant to obtain copies of their consumer reports had they known that Defendant: (i) would violate the provisions of the FCRA; (ii) was obtaining their reports in violation of the law; and (iii) had a pattern, policy, and practice of taking adverse actions in violation of the FCRA.

127. Moreover, Plaintiff and the Certification Class would have never permitted Defendant to obtain a copy of their consumer reports had they known that Defendant would deny them the opportunity to dispute their reports before taking any adverse action.

128. Defendant's failure to comply with the unambiguous mandates of the FCRA injured Plaintiff and the Certification Class.

129. Defendant acted in deliberate or reckless disregard of Defendant's obligations and the rights of Plaintiff and the Certification Class.

130. Defendant's reckless conduct is reflected by, among other things, the following:

a. Defendant has access to legal advice;

b. Defendant has ignored regulatory guidance from FTC Informal Staff Opinions and the unambiguous language of the FCRA; and

c. Defendant made certifications per 15 U.S.C. § 1681b(b)(1) that it purposely violated.

131. Plaintiff and the Certification Class are entitled to statutory damages of not less than $100 and not more than $1000 for each of Defendant's violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

132. Plaintiff and the Certification Class are also entitled to punitive damages for Defendant's violations pursuant to 15 U.S.C. § 1681n(a)(2).

133. Plaintiff and the Certification Class are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of herself and those similarly situated, respectfully requests that this Court enter judgment against Defendant as follows:

a. Certifying the Adverse Action Class, Authorization Class, and Certification Class under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

b. Designating Plaintiff as class representative and designating Plaintiff's undersigned counsel as counsel for the Proposed Classes;

c. Finding that Defendant committed multiple, separate violations of the FCRA as to each Proposed Class Member;

d. Finding that Defendant acted in deliberate or reckless disregard of Defendant's obligations under the FCRA and the rights of Plaintiff and the Proposed Classes;

e. Awarding statutory damages as provided by the FCRA;

f. Awarding punitive damages as provided by the FCRA;

g. Awarding any unpaid wages as provided by the FLSA;

h. Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

i. Granting other and further relief, in law or equity, as this Court may deem just, equitable, and/or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all Counts so triable.

Dated: 04/30/2026

Respectfully submitted,

By: */s/ Courtney C. Washington*
Courtney C. Washington
Bar No. 24115928
**SIRI & GLIMSTAD LLP**
107 S. McGraw Ave.
Forney, TX 75126
Direct: 972-349-1906
Fax: (646) 417-5967
Email: cwashington@sirillp.com